in the next case, which is No. 20-3587, Busher v. Barry, and we'll wait for counsel to come up to the front. Please stand by for a moment of silence while we wait for counsel to come up to the front. Okay, we'll hear first from the appellant, Mr. Halabian. Thank you, Your Honor. And please, the Court, my name is John Halabian. I'm counsel for Plaintiff's Appellants. Plaintiff's Appeal involves three issues for reversing the law report. First, the Court erroneously dismissed claims that accrued after 2008 and were therefore within the statute of limitations. Second, the Court erroneously denied equitable tolling of claims that accrued between 1987 and 2008. And third, the Court erroneously denied summary judgment on the corporate purpose of the Wing-Foot Holding Corporation. The Court erred when it held that the only timely claims that survived defendant's motion accrued in 2013, because in doing so, the Court sua sponte dismissed numerous other claims that accrued after 2008 and did so without giving plaintiffs notice or an opportunity to be heard. In both Plaintiff's original 2014 complaint and the amended 2017 complaint, plaintiffs alleged numerous events after 2008 that gave rise to breach of fiduciary duty and unjust enrichment claims regarding the leases and the club's wrongful acquisition of shares. As you will hear in a moment, the District Court also recognized in an earlier 2016 decision that there were numerous post-2008 events, not just one, giving rise to plaintiff's claims. Now, here the scope of defendant's motion for summary judgment is critical. Defendant's cross motion for summary judgment first sought to dismiss claims prior to 2008 slowly on statute of limitations grounds, and second sought to dismiss claims accruing after 2008 solely on grounds of acquiescence, ratification, and waiver. Since the lower court completely denied defendant's motion to dismiss the post-2008 claims on equitable grounds Well, in the District Court's opinion when it ruled on that, it seemed to think that the only claim that survived the statute of limitations was the 2013 lease extension. So you're just arguing the District Court was wrong in deciding when those claims accrued. You're not saying like it's inarguable that those claims accrued at a later time. I'm sorry. So the District Court in its opinion pretty clearly said that the 2013 lease extension was the only claim that was not barred by the statute of limitations. And I understand that you disagree with the determination about when those claims accrued and you think maybe they shouldn't be barred, but it's not a misunderstanding on the part of the District Court. Well, I do respect your – I don't know if I entirely agree with your – Well, that's what I'm asking. So why not? Well, because considering the fact that the court earlier entirely sustained the entire original complaint with the same claims basically and did not – we believe that when the court said referring to some example of something that was within the six-year statute of limitations after 2008 because there were all these other claims. So when it says you can proceed solely with respect to the 2013 lease extension, that was just an example of what you can proceed with? Your Honor, if that had been the first motion for summary judgment and we were on a clean slate, I think that argument – that might be a colorable argument. But considering that there was an earlier motion for summary judgment against the complaint – But anyway, your argument that the claims actually accrued later is based on this idea that it's when you take the option as opposed to when you negotiate for it is when the claim accrues, right? Is that your argument for why – It depends. Well, first of all, it depends on which claim you're referring to. We have claims for fiduciary duty. We have claims for unjust enrichment. We have claims that are just against the director of defendants. We have claims that are against the club. It's not an easy situation. It depends which claim against which party we're referring to. Well, I understand, but we have to – we would have to untangle that. So I guess I'm asking, so what did the district court get wrong? So if I read the district court as saying that the only claim that survives is the 2013 lease extension, what did the district court get wrong about the claim – why the other claims accrued later than that? Because there were – because we had claims in the original complaint and the amendment complaint that basically said that when the director takes office and they're sitting in their chair and they have fiduciary duties, one of them was to set aside or take action against the wasteful leases that constitute a wasteful lease appropriation. And they just did their – they didn't do that. So that means that even though you have a claim that accrues when the corporation extends the lease, it renews every time a new director takes office and doesn't attempt to rescind the lease? Well, if it's a void lease. Now, we did allege facts in the complaint, Your Honor. If you search for the word, for example, misappropriate or looting or waste, it comes up probably 20 times in the complaint. And the defendants will have noticed that, you know, basically as this Court has found in case law, that a lease that constitutes basically a gift or waste or misappropriation is void. And as the New York – in Alphonse Hotel and if the New York Court of Appeals has found that void leases are not subject to statute of limitations and that you could bring an action on a void lease 100 years later, and the only – and the difference is that when you do bring the action, you don't – you can't go back 100 years for damages, but you can certainly go back within the limitations period. Mr. Halabian, here's what confuses me to some degree. You made a motion for summary judgment in 2018, and at page 48 of your brief, you said that your derivative claims, which go back decades and normally would be subject to a six-year statute, have been told because of affirmative acts of concealment. And nowhere there did you say anything about your claims in part not having accrued until less than six years before the filing of the action or within – well, let's just leave it at that. That's the first point. And then secondly, the other side cross-moved for summary judgment, and they argued timeliness or untimeliness, and your opposing memorandum responded to that argument first by arguing equitable estoppel, and then you have an argument heading that says that the claims didn't accrue until discovery because the claims involved actual fraud, but that argument doesn't attempt to piece out particular parts of the complaint that accrued recently. It just said across the board that there had been concealment, which was just a different way of putting the first of your two arguments. So as I understand the record, and I'm going to ask you if I misunderstand it, and if so, how, the argument you're now making that portions of your claims accrued after 2008 was never advanced into the district court. Your Honor, I go back to the original – defendant's original motion for summary judgment. They sought to dismiss – we had a complaint that got filed in 2014 as a statute of limitations goes back to 2008. I'm sorry. You're speaking faster than I listen. I'm sorry. It's a function of age, not mine. Well, I'm not so young either. Our original complaint was filed in June 2014. It went back to 2008. We basically – we had three claims, violation of business corporation law 720, which is basically prohibits directors from committing waste, fraud, misappropriation. Yeah. Reached a judiciary duty for basically the same three claims and unjust enrichment. We said all those claims started in 2008, that the relief we were seeking, that those leases get set aside, vitiated, whatever you want to call it. Defendants were on notice of that. They sought to dismiss all those claims. Originally had equitable grounds. The court denied it entirely and went into some detail as to how the claims – how there were events that occurred in 2009, 2010, and 2013 that led to viable claims. Now, when the judge decided that, under law of the case, we assumed that, you know, we had already overcome the obstacle of proving that we had claims from 2008. And what got confusing is when the – in the second rounds of the motion for summary judgment, the scope of the defendant's motion was first they want – they only asserted statute of limitations grounds against claims before 2008 and only equitable acquiescence ratification waiver against claims after 2008. And that application was denied in its entirety. So we're basically saying we didn't have – if somebody was considering dismissing claims that had been sustained earlier, we had no reason to think that we had to fight the same battle again. We should have gotten some kind of notice or an opportunity to be heard before most of all the claims that were sustained earlier got dismissed sort of sub salientio. As suggested by Judge Jacobs' question in the last case – I think it was in the last case – you ultimately – I mean the district judge made clear in the March opinion, did he not, that the only thing that survived was the last renewal? It wasn't clear to us, Judge, because of the earlier decisions. It wasn't clear to us. Which earlier decision? Well, there were two decisions in 2016 where he basically upheld very strong language which were the same claims in the amendment. On page 30, I believe – I wanted to get to something to read to your eyes. In a 2016 opinion, denying defendant's motion for summary judgment, the court said, to transfer shares and provided allegedly misleading information to shareholders to fraudulently induce the sale of their stock to the club. That's 2016 Westwall 1249612 at 5. I'm sorry. It sounded like my social security number. I was putting it in the record so I could see. Yeah, I know, but I'm trying to find where you're reading from. Could you give us the record reference, please? Well, this is a cited case, Judge. It's not in the appendix. It's not in the appendix. This is not a decision we were appealing for, and I apologize because we should have put it in the appendix so it would have been easier for your honors to find it, and I'm sorry about that. It is a cited case. Okay, we understand. I mean, you read it, so we have it, but we just don't have a copy of it in the record, so why don't you explain the implications of it? So you're saying that the district court had sustained these claims? The district court had sustained these claims in 2016, and there was another decision. There was a decision on March 28, 2016, and there was a second decision when defendants made a motion for reconsideration on May 10, 2016, where the judge actually had even stronger language supporting the complaint. He said, Plaintiff has submitted enough evidence to create a mis- But then in the decisions that are in the record from which we are taking an appeal, like the March 2019 decision on summary judgment, the district court was pretty clear that only the 2013 lease extension survives. As I said before, if this was a clean slate and that's the first decision- So you're saying you didn't interpret it that way? I'm saying that because of the earlier decisions, it wasn't really clear. We couldn't consider that it was comprehensible that a case where we had two decisions upholding a whole series of claims, that they all just disappeared by what might have been not such a clear line in a decision in 2019. It didn't become clear. What happened here is as we were preparing for trial and we were conferring with the defendants about what issues were in the case, it became clear that they had a reading of the decision, as Your Honor suggested, that it was completely in variance with ours. And it wasn't until- I mean, it's just- I mean, I guess I understand your point, so I won't belabor it. But, you know, on page 13 of the special appendix, the district court says- I'm sorry, page 13 of- Of the special appendix, the district court says, after considering the statute of limitations, accordingly, plaintiff's claims arising from conduct before June 16, 2008 are barred by the statute of limitations. The court will analyze parties' motions solely as they relate to the 2013 lease extension. It's just- It's hard to read that as just one example. But I take your point, that it was against the backdrop of these other decisions. I understand what you're saying is not irrational. It makes sense. But I'm saying in the context of what happened in the case before, we couldn't understand- And the court didn't really go into a lot of detail. The court didn't identify, you know, what claims- Well, can I ask you just- So just to move on from this point, since we're already over time. I mean, you said one of the issues that you're putting before us is this question of corporate purpose. Yes. But so here we have the opposite problem. The district court never ruled on the question of corporate purpose, right? The district court said there was a question of material fact as to corporate purpose, and we're going to proceed to trial. And then you voluntarily dismissed the claim that survived, which is the 2013 lease extension, that was going to consider the question of corporate purpose. Right? Yes. So the disposition of that issue was your decision to voluntarily dismiss the claim. But that doesn't- That doesn't give us the opportunity to take an appeal immediately. And Judge Menasche is- One of the decisions that they raised- Well, whenever somebody loses a motion for summary judgment and it proceeds to trial, they don't get to proceed to take an appeal immediately, I mean, unless it can be certified for interlocutory appeal. Well- But that's not extraordinary. That's what normally happens. If there isn't summary judgment and you're going to proceed to trial. Right? The only way we can't bring that up, like as we did here, is if the case went through trial. Right. Yeah, but it didn't. Well, it didn't because you decided not to proceed to trial. Judge, you should know better than anyone because you wrote the Omega case that the defendant cited, that they misapplied and deceptively cited because the big distinction between this case in Omega and the other case, Ortiz, that was involved in the Omega case is that in all those situations, those cases went totally through trial. No, I understand. So there you have a trial record that overtakes the summary judgment record. Yes. That didn't happen here. You don't have here. But here you have a different issue, which is that you were going to proceed to trial on this question of corporate purpose and you decided not to proceed. That doesn't... And so the district court never, just never rendered a judgment on this question. It rendered a decision that it wouldn't, that it denied summary judgment. I mean, it did... Right. So the district court said there's a question of a material fact as to corporate purpose. And so we'll have a trial on that. Right. What we did was not unusual. I mean, this isn't the first case where someone had a claim that was hanging out there and other claims were dismissed and they wanted to... Right, right. That's right. So normally you could do that to appeal the other claims. Yes. But you actually want to appeal the claim that you voluntarily dismissed. Judgment. A judgment's entered all the interlockages that merge into judgment. I mean, we did not go to trial so we did not lose the right to appeal the denial of the corporate purpose. Well, what about the Empire Volkswagen case, which says the reverse of that? I think... I don't have that exactly in front of me, but I understand that came up in that context and it's just... It was miscited. It's not applicable. I think your case, Omega, and the Ortiz case are on point. You know, in Omega, I believe somebody... There was a claim that was denied, a motion for semi-judgment that was denied. I can't remember the exact issue. But the case went totally through trial and then the party that tried to appeal the denial of the motion for semi-judgment before the case went to trial because it goes to trial through judgment. You know, when it goes through the judgment, then... Okay, I think I have that argument. I just have one other question, which is just that you talk about fraudulent concealment. Yes. Right? So what is the concealment? I mean, did the holding company really hide any of the transactions? Absolutely. And I know that you've got a pretty good dose of fraudulent concealment already. Yeah. This was intentional, conscious, and affirmative. I mean, basically what was going on is... Take the 1947 lease, for example. The defendant's whole argument here is that everything was open and notorious and everybody knew about everything. Let's talk about what happened in 1947. So by 1947, the initial structure of the club, which was 600 members and 600 shareholders, which, with that structure, you could conceivably say that all the shareholders and members had a sole-purpose supporting club because everybody was in the same boat. Everybody was treated equally. And then that broke apart because of the Great Depression and... Sorry. So then are you saying they concealed the change in the structure? Yes. Let me get to this, though. So what happens around 1947 when this lease got changed is that two-thirds or more of all the shareholders are no longer members. And when they go to do this lease, they only give notice to the members, to the shareholders who are still members. I have a... I'd like to... I'm glad you asked the question because Appendix 2736 and 2739 are pages of affidavits of service that the club did in 1947. Okay. So the thing that you're saying is concealed are the actions the corporation took for the benefit of the club? Well, this 1947 change of the lease, which the original lease was paying... So you're saying that they concealed the change in the lease terms. I just want to know what's the... Well, they did, yes. For example, they told... Yes, they did not disclose. But the problem is that whatever true statements might have gone out that arguably would have put someone on inquiry notice, they were accompanied by materially false and misleading other statements. So they said, yes, the corporation might be incorporated under the business corporation in New York, but it was never intended to make any money. Okay, so you're saying that the concealment is that the purpose, they concealed the true corporate purpose. Is that what you're saying? For example, they concealed... But now, I guess the problem that I'm having is the corporation believes that that is their corporate purpose to support the club, right? I understand you disagree with them, but that's what they believe is the purpose of the corporation. Judge, the first time you're saying there's any evidence of that, really any evidence, is when they were doing the 1947 lease, they had this self-service... Okay, so you're saying that we should infer that in fact they knew that the purpose was to make money for the shareholders and not to support the club, and so their statements that their purpose was to support the club are fraudulent. I'd like to explain that a little bit. When the club started, there were 600 shares, 600 members. Each member had their own share. So you could say that the sole purpose of the corporation and the shareholders was to support the club because everybody was a complete identity of interest. Everyone got treated the same. So then you're saying that the corporate purpose changed? When the club breaks apart, the holding corporation was incorporated under the business corporation law as a for-profit corporation, to which directors owe fiduciary duties to the corporation and the shareholders, we all know. When the club was a complete identity of interest  it was easy to execute that fiduciary duty to serve the club because everybody was getting the same return. Everybody was... If it was a low market lease... So you're saying the true corporate purpose didn't become apparent or relevant until after there was no lack of equity? Well, it sold equity shares. I mean, this is a real... People were reselling shares from one member to the next and making a profit. And they touted this as an investment. I get it. I think we're pretty over time, but you've reserved time for rebuttal, so we'll hear from you again. Thank you. Let's hear first from the appellee and then we'll hear back from the appellee. Ms. O'Connor. Thank you and good morning. Maeve O'Connor for the defendants' appellees. May it please the Court. I want to respond to a few things that Mr. Halabian said. Obviously, we think that the issues here are not that complicated. This is a case that tries to undo a century of consistent practice between the Wingfoot Holding Corporation and the Wingfoot Golf Club and hold defendants liable for operating those entities essentially the same way they've been operated for 100 years. This is the type of circumstance that statutes of limitations are designed to address. And so we believe Judge Ramon's decision was correct. To address a few of the plaintiff's points, first, I want to touch briefly on the question of equitable tolling. Plaintiffs admit that they had access to documents showing that the Holding Corporation was not making a profit. They argue that these didn't put them on notice because defendants somehow fooled them into thinking that the Holding Corporation was not supposed to make a profit. That argument fails as a matter of law for a couple of reasons. First of all, it's facts, not legal theories, that put plaintiffs on notice. And here, plaintiffs had access to all of the facts that constitute their claim. They knew that they had shares in a BCL New York corporation, that they weren't getting dividends, that the lease was $30,000 plus some expenses, that it hadn't changed in decades, that the golf club was the majority stockholder. There's evidence in the record that a, you know, a non-member stockholder by the name of Fisher had piles of financial statements and he said he could call the, he said the girls at the club and get whatever documents he wanted and then send them. So this is inquiry notice. None of the allegations of fraudulent concealment concealed those facts. And so, to me, sort of, it's game over right there. Nothing concealed the certificate of incorporation. Nothing concealed the lack of any dividend. Nothing concealed the financial statements. So what it comes down to is a contested legal theory that plaintiffs say should have been disclosed and there's no legal obligation to do that. In addition... What about the argument that if the void was invalid ab initio, it's not subject to the statute of limitations? Yes. I guess I have two reactions to that. One is that argument was never raised below in any form, ever. So that's waived. But second of all, even if it weren't waived, it's simply incorrect as a matter of law. Mr. Halabian relies on a case that related to a forged deed.  to real estate law and a forged deed. And the court takes a look and says nothing in the New York CPLR statute of limitations addresses a forged deed. And we're going to conclude that in that circumstance that's outside the statute of limitations. But the New York CPLR has a statute of limitations for a derivative claim of waste. Six years. So you can't simultaneously say but my derivative claim of waste has no statute of limitations applied to it. It's just wrong. What about the argument that new directors had an obligation to rescind the leases that were wasteful or to seek to rescind them? That is another argument that was never raised below. It wasn't raised in summary judgment. It doesn't appear in the amended complaint. It appears nowhere. So that's also waived. Having said that, there's also, we've seen zero legal support for that. And we keep pointing out that can't be the law. We're aware of no case. Plaintiffs have cited no case suggesting that directors of a New York corporation can be held liable for not rescinding contracts previously entered into. It would create a situation where the statute of limitations almost doesn't apply to a board because you always have an obligation to be undoing things from the past. There's no basis for that argument in the law. Certainly nothing has been cited here. So if I could just move on to... Oh, one more point I wanted to make, if I may, on the fraudulent concealment point. Mr. Halabian referred to communications that were materially false in his leading and he says these are the reason why claims were delayed. Neither of the plaintiffs got any such communication. And we're talking about, he identifies that a small handful of communications over the years, like I think maybe five or four are cited. So neither of the plaintiffs claimed to have gotten such a communication. Neither of the plaintiffs claimed to have been confused by it. And on the contrary, Mr. Halabian represented to Judge Ramon in one of his filings below, plaintiffs represented, that a different shareholder had threatened to sue 10 years earlier. So people had the notice that they needed to develop this legal theory. If I could briefly... Even if they hadn't received it, could it be relevant in saying, well, if they were on inquiry notice, if they looked into it, they would have found maybe the minutes of the meeting at which the board took different actions, but that was accompanied by different communications that were misleading as to corporate purpose and so therefore it wasn't really discoverable. Could it be relevant that way? I don't think so because there was no concealment of the underlying facts, right? So there's no... So it's really that point. It's that what they were... That's right. They were concealing facts or a legal theory. That's right. That's right. So the notion that the district court issued a sua sponte dismissal of all timely claims without summary judgment briefing, we also strongly disagree with that. I think my friend has mentioned a few categories. The first was share sales post 2008 and in our summary judgment briefing we argued that there's no... Well, before getting to the different claims and whether they're barred, what about the import of the earlier decisions that sustained the claims for conduct that happened in 2010 and 2009 and so on? Wouldn't you... You know, aren't the appellants reasonable in inferring from those decisions that actually those claims were upheld? I don't believe so. I believe they're overreading that decision for a couple of reasons. One is that the only question was whether defendants were entitled to summary judgment on the basis of latches and Judge Amman found that there were factual disputes at that point. This was before deposition discovery. Mr. Halabian even represented in his papers that he still needed deposition discovery to explore some of those claims. Subsequently, at the close of all discovery, they filed an immense amended complaint and it was on that basis that the parties proceeded and litigated summary judgment. So we don't believe that there's any basis to treat that decision as having made a finding that they had legally valid claims. And if you take a look at... If it's... If the tenor of those previous decisions, even granting your point about latches, suggested that the district judge construed them at that time as making claims of breaches of fiduciary duty and the like that occurred in the six-year period prior to filing, why wouldn't they be entitled or at least reasonable in relying on that in briefing the subsequent motions addressed to the second amended complaint or the amended complaint? So the only thing that was mentioned in that portion of Judge Ramon's 2016 decision was one communication with a shareholder about a share transaction and then prior lease arrangements. So I don't think that there was anything in there that really could be relied on in this way. When we got to our motion for summary judgment, we very clearly said that any share transactions that they're trying to act on post-2008 are not derivative claims. They're direct claims. They belong in a parallel class action where they're assertive. They didn't involve the plaintiffs. And Judge Ramon agreed with that. Plaintiffs didn't respond to that argument, but that was there. The failure to rescind argument had never been made before in any form until Mr. Hilligan raised it, I think, six months or so after the summary judgment decision came down. So nobody could have thought to specifically say there's no claim for failure to rescind. Same with the purportedly void 1947 lease. Nobody could have thought to say, oh, by the way, there is a statute of limitations for that lease. There's no question of voidness because that argument had never been made before. And so I think that the parties are entitled to make a motion on the complaint that exists. And Judge Ramon is entitled to make his decision on the complaint that exists in the papers that are before him. To the extent plaintiffs feel they had other claims that they had to get articulated to anyone, I would say that summary judgment is probably too late for that and they really should have raised them so that they could be considered and part of the record. The only other issue that plaintiffs raised as to claims that they say were improperly suespanti dismissed relate to this 2002 lease extension. And there we argued very clearly in our summary judgment papers that that claim accrued in 2002, any claim related to that lease extension. We cited evidence in the appendix that was not disputed that there was a set of board minutes from the Wingfoot Holding Corporation saying, yep, that lease has been returned to us and we're going to go file it. There is 2002 financial statements that say the lease extension term now goes through 2050 and plaintiffs admitted these facts. So these were before Judge Ramon and a decision was made that that was, to be told, it was an unrebutted argument. If I may, I'm virtually out of time. Just one final point is fine. Okay, one final point. I believe that this Court does not have jurisdiction to review their denial of the summary judgment motion. And I think that this Court recognized in the Omega case that a denial of summary judgment is interlocutory, that even if an exception applied, plaintiffs waited too long. This is not a case where the denial of summary judgment actually decided a claim against plaintiffs in a way that effectively dismissed their claims. All their claims survived. They were to go forward to trial. And that is not appealable. Well, not all their claims survived, but at least this issue of the corporate purpose was still to be determined then. That's right, I misspoke. That's exactly right. Thank you very much. Thank you very much, Mr. Halibian on rebuttal. Thank you, Judge. Let me first say that my colleague here said that we didn't give them any notice or allege anything about rescinding leases, but a prayer for relief in the amended complaint on appendix page 22 specifically says for a whole bunch of requests, setting the lease extensions beyond termination of the original lease in 1987 aside. So, yeah, we didn't maybe use the rescind word, but it clearly says setting the lease extensions beyond termination of the original lease in 1947 aside. Typical English understanding and that should encompass that. So they were on notice of that. In terms of the equitable tolling, there was clearly affirmative misrepresentations and largely because if someone inquired, which they did do, and anything about the holding corporation, they were told whatever is in the corporation or anything like that was never intended to make a profit. It was solely... Well, right. So the certificate of incorporation was not being hidden and all of the activities of the corporation were not being hidden. It's just that if somebody inquired, the corporation expressed its view that its actions are consistent with the certificate of incorporation, right? Not even the lower court was certain that the certificate of incorporation meant that... No, I understand. There's a question as to whether that's actually what the certificate of incorporation meant. But the basis for your claim is the certificate of incorporation and that itself was not hidden from anybody. No, but... Well, somebody could have called the Secretary of State. Most of these people that inherited these shares didn't even know what the entity was. They were dealing with the target-rich environment of unsophisticated people. They were mostly heirs and devisees of people that might have belonged to the club. When they asked anything... You know, I understand, but I'm just kind of responding to what opposing counsel said about the distinction between facts and legal theories. What you're saying the corporation was hiding was not the facts of its activities or the fact of the certificate of incorporation, but the argument that its actions were not consistent with the certificate of incorporation. They were hiding things. Like, for example, there's a document in a record where Mr. Gillespie, who's a CFS-Wyndham War partner, who was really the most important person, legal person in the history of Wynkwood, he was telling people, don't give them the lease. The original lease said that the club was to pay the entire net revenue over to the holding corporation. That might have disclosed that the holding corporation was entitled to make some kind of profit, but they concealed that. They wouldn't hand stuff like that over to anyone who asked. So even if there's some kind of inquiry notice, when people inquired, Your Honors, I mean, they were misled. In writing, in the record, there are letters from the holding corporation to people misstating the entire status of what the whole holding corporation was about. Okay. I think we have that argument. Thank you very much, Mr. Polibian. The case is submitted. And because that is the last case to be argued today, we are adjourned. Of course, thanks, sir. Thank you. Thank you.